UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE CUSTARD HUT FRANCHISE LLC,

        Plaintiff,                                    Case Number 21-12099

v.                                                  Honorable David M. Lawson

H & J JAWAD LLC d/b/a THE CUSTARD
COMPANY, THE CUSTARD COMPANY —
AMOCO LLC, and THE CUSTARD COMPANY
— HEIGHTS LLC,

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO AMEND AFFIRMATIVE DEFENSES

        The dispute in this case involves two company groups with stores in southeast Michigan that sell frozen custard. The plaintiff, which operates stores under the name "The Custard Hut" alleges among other things that the defendants — three limited liability companies owned by , Jamal Jawad — which operate stores under the name "The Custard Company," engage in unfair competition by infringing its trademark and trade dress in violation of federal law, and that they violated the federal Anticybersquatting statute, violated Michigan's Consumer Protection Act (MCPA) by registering two domain names containing the term "custard hut," and committed unfair competition under the common law. The case is scheduled for a jury trial to begin on December 12, 2023. The defendants, represented by new attorneys, have moved for leave to add an affirmative defense directed to the MCPA count. The plaintiffs oppose the motion. The Court heard argument in open court on October 10, 2023. Because the amendment would be untimely, the defendants have not shown good cause for the late pleading amendment, and the proposed affirmative defense lacks merit, the motion will be denied.

I.

The Custard Hut has operated in Dearborn Heights, Michigan, since 1979. SCZ, LLC, a company owned by Zahra Saad, purchased "The Custard Hut" trademark and goodwill from the former owners in 2013. SCZ, LLC later assigned the "The Custard Hut" trademark to the plaintiff, The Custard Hut Franchise, LLC (which Zahra Saad also owns), in June 2018. There presently are three Custard Hut stores in the metropolitan Detroit area, all of which are owned by SCZ, LLC, or by M&M Saad, LLC, which is owned in turn by Zahra Saad's husband, Michael Saad, and his cousin, Mohamed Michael Saad.

Defendant The Custard Company has operated in Dearborn, Michigan, since July 2019. Michael Saad's cousin, Jamal Jawad, owns defendant H&J Jawad, LLC, which in turn owns The Custard Company's Dearborn store and the other limited liability companies named as defendants: The Custard Company —Amoco LLC (the "Amoco LLC"), which formerly planned to open a Custard Company store in Dearborn; and The Custard Company — Heights LLC, which operates a Custard Company store in Dearborn Heights. After exhibiting confusion regarding the relationships between himself and the various Custard Company entities at issue in this litigation, Jawad testified that he personally owns the rights to "The Custard Company" and permitted the defendants to use the name.

The instant dispute originated in July 2019. When Jawad planned to open a pizzeria in Dearborn earlier that year, Michael Saad proposed that he open a Custard Hut location instead. After some negotiation, the cousins orally agreed that Jawad would operate the store as a franchise of the plaintiff. Although parties never drafted a formal franchise agreement, Jawad began training at The Custard Hut in Dearborn Heights while building out a Custard Hut location in Dearborn. Between March and July 2019, Jawad worked at The Custard Hut learning how to make and fill

ice cream cones and order supplies. He also completed renovations on his Dearborn location to comply with the plaintiff's design specifications, including painting the store pink, white, and black; installing counters and equipment in particular places; and putting up exterior signs, one bearing the name "The Custard Hut" in chain-letter script, and one bearing the words "Home of the Waffle Sandwich" on a picture of a cone.

At some point, Zahra Saad began to have misgivings about Jawad operating a Custard Hut location. For that reason, Michael Saad informed Jawad on or around July 15, 2019 that, for the sake of their friendship, it would be better if Jawad did not proceed with the franchise. Michael testified that he and Jawad spoke by phone, that Jawad sounded relieved, that he offered to buy back any unwanted equipment from Jawad, and that Jawad said that he planned instead to open an ice cream shop, not a custard shop. Jawad testified that Michael simply sent him a text, and that he responded, "No problem."

According to Zahra Saad, on or about July 16, 2019, Zahra began receiving congratulatory messages from friends regarding a Custard Hut opening in Dearborn. Concerned, Zahra went to Jawad's Dearborn store, which she found to be open for business selling frozen custard. She expressed her unhappiness to Jawad, who agreed to take down his Custard Hut signs, and, according to Zahra, also agreed to paint his walls and not to sell waffle sandwiches. Jawad told the story of that day somewhat differently. He explained that he and his father were doing work in the store when passersby asked if they were open, so they spontaneously decided to give away or sell the perishable product he had stocked before he agreed not to operate as a Custard Hut franchise. Jawad testified that he told any customers who asked that the store was not yet officially open and was changing its name to The Custard Company. He stated that he apologized to Zahra "a hundred times" for appearing to operate under the name The Custard Hut and offered her all of

the proceeds from the register, which totaled somewhere between $75 and $300. Jawad removed or covered up the Custard Hut signs the next day, and Zahra Saad later bought back the signs.

On or about July 21, 2019, Jawad officially opened his Dearborn store as The Custard Company. Before opening, he had banners with the name "The Custard Company" installed on the outside of the building, which he eventually replaced with a permanent sign spelling out "The Custard Co." in a pink sans-serif font. Neither Zahra nor Michael Saad objected to Jawad using that name at the time. Jawad swore in a declaration that he informed Michael on or about July 19, 2019 that he intended to open a custard store under the name.

Jawad has continued to operate a Custard Company store at the Dearborn location since July 2019. He has made changes to the store's interior and uses colors besides pink, white, and, black in his products and marketing. Although The Custard Company initially did not sell waffle ice cream sandwiches, after receiving several requests from customers, it formally added "Wowffles" to its menu in March 2020. The Custard Company since has built a large online following, including through a TikTok account that boasts more than 270,000 followers and has earned more than 8 million likes. It has expended significant resources advertising its business by building up its social media accounts, promoting the company online, sending coupons to local customers, and buying ad space at Pistons games. A second Custard Company store opened during the summer of 2022 in Dearborn Heights. The Dearborn Heights store is owned by The Custard Company — Heights, LLC (the "Heights LLC"), an entity Jawad in turn owns with a business partner, Mo Baydoun. The Amoco LLC defendant, however, never opened the planned Custard Company store in Dearborn.

Because The Custard Hut primarily markets its business through social media, Zahra Saad stopped using "thecustardhut.com" domain name in 2014, shortly after purchasing the company.

The plaintiff never has used any other website. On November 27, 2020, an employee of H&J Jawad, Karim Kadouh, bought the domain name "thecustardhut.com." Kadouh registered the site in March 2021. In June 2021, Michael Saad tried to make an email address using the domain name "thecustardhut.com" and learned that the name already was registered.

On September 9, 2021, plaintiff The Custard Hut filed its original complaint, naming only H&J Jawad LLC d/b/a The Custard Company as a defendant. The complaint alleged trademark infringement in violation of section 43 of the Lanham Act, trade dress infringement in violation of the same statute, cybersquatting, a violation of the MCPA, and common law unfair competition. By stipulation, the plaintiff amended its complaint on May 15, 2022 to add The Custard Company — Amoco, LLC as a defendant. The defendants raised numerous affirmative defenses in their answer to the first amended complaint, including laches (Affirmative Defense 11), unclean hands (Affirmative Defense 10), and that the plaintiff caused any confusion between the two companies through its social media posts (Affirmative Defense 9). Discovery closed on May 25, 2022, although allowances were made for certain disclosures after that date. With leave of court, the plaintiff filed a second amended complaint on March 23, 2023, adding The Custard Company — Heights LLC as a defendant. No new counts were added. Meanwhile, the Court adjudicated the plaintiff's motion for partial summary judgment attacking some of the defendants' affirmative defenses on March 21, 2023. The parties also stipulated to dismiss with prejudice the defendants' affirmative defenses of unclean hands and confusion caused by the plaintiff's social media posts.

The parties have engaged in efforts to resolve the case, and the Court postponed scheduled trial dates to accommodate those efforts. They have not met with success. Trial now is scheduled to begin on December 12, 2023. In July and August of this year, new attorneys appeared for the defendants.

II.

The defendants' new attorneys filed a motion on September 28, 2023 to add an affirmative defense to the MCPA count in the second amended complaint. This claim has existed since the beginning of the lawsuit. The defendants now hope to assert that they are exempt from MCPA claims as a regulated entity under Michigan Compiled Laws § 445.904(1)(a). They maintain that the Michigan Department of Agriculture and Rural Development (MDARD), which administers the Michigan Food Law, Mich. Comp. Laws § 289.1101 *et seq.*, and licenses dining establishments, regulates the conduct described in the second amended complaint. The plaintiff opposes the motion, arguing that the eleventh-hour amendment would be untimely, and it would be prejudiced because the amendment comes on the eve of trial.

Motions to amend before trial are governed by Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) requires a party seeking to amend its pleadings at this stage of the proceedings to obtain leave of court. The plaintiff contends, however, that the controlling rule here is Rule 16(b), which governs amendments of scheduling orders. It points out that section III of the scheduling order states that "the parties must move to amend pleadings no later than 30 days before the close of discovery." ECF No. 9, PageID.63. That date has long passed. Under those circumstances, consideration of a motion to amend filed after the deadline set in the Court's scheduling order entails a two-step process under Rules 16(b) and 15(a). *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Under Rule 16(b), the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Only after the movant shows good cause may the Court consider whether to grant leave under Rule 15(a)'s directive that 'leave shall be freely given when justice so requires.'" *Little Mountain Precision, LLC v. DR Guns, LLC*, No. 1:22 CV 1471,

2023 WL 5625739, at *2 (N.D. Ohio Aug. 31, 2023) (quoting *Cooke v. AT&T Corp.*, No. 05-374, 2007 WL 188568 (S.D. Ohio Jan. 22, 2007)).

The defendants have made no effort to demonstrate good cause for the scheduling order change, and none is apparent from the record. The motion can be denied on that basis alone. Even under the more liberal standard of Rule 15, though, the motion is wanting. Although Rule 15(a)(2) says that "[t]he court should freely give leave [to amend] when justice so requires," leave may be denied for undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). Two of those reasons are relevant here: undue delay and futility.

**A. Delay**

The defendants' request comes on the eve of trial and over two years after the initial complaint was filed. It is true that delay alone does not justify denial of a motion brought under Rule 15(a). *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). And Rule 15 itself does not establish a deadline within which a party must file a motion to amend. *See Lloyd v. United Liquors Corp.*, 203 F.2d 789, 793-94 (6th Cir. 1953) (reviewing a district court's denial of a motion to amend after the entry of summary judgment). But the party seeking to amend must "act with due diligence if it wants to take advantage of the Rule's liberality." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (quoting *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995)). Where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir.

2001) The count of the second amended complaint to which the proposed new affirmative defense is directed has been in the case from the start. The amendment proposes a legal defense that was readily available at the outset of the case. It is not apparent from the motion papers why the defendants waited to raise it. Courts are especially inclined to deny a motion brought under Rule 15 "if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1487 (3d ed.); *see Wade*, 259 F.3d at 459 (finding undue delay where the plaintiff knew the facts forming the basis of the amended claims but failed to plead the claims in the original complaint). Similarly, where a party waits until the end of the allowable discovery period to investigate the facts of the case, due diligence is difficult to prove.

Courts will deny leave to amend where there is "some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). Here, the amendment would require the Court to reopen briefing on the plaintiff's summary judgment motion or allow a fresh round of motion practice on the new affirmative defense, which would destroy any hope of getting this case before a jury as presently scheduled. The Sixth Circuit readily has found prejudice and affirmed denials of leave to amend on similar facts, particularly where the defendant has no plausible excuse for the tardiness of its efforts to amend. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005) (finding that "amendments on the eve of the close of discovery would be prejudicial to defendants and unduly delay trial"); *Duggins*, 195 F.3d at 834 (denying leave to amend because "discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed"); *Parry*, 236 F.3d at 306-07 (upholding denial of leave to amend complaint where amendment was sought more than a year

after original complaint was filed, summary judgment had been granted to defendants two months earlier, and the plaintiff was attempting to add a new legal theory).

The proposed amendment comes too late and would cause undue prejudice to the plaintiff.

**B. Futility**

A court may deny a motion for leave to amend when the proposed amendment would be futile. *United States ex rel. Harper v. Muskingum Watershed Conserv. Dist.*, 842 F.3d 430, 439-40 (2016). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Although Rule "12(b)(6) motions are made with reference to complaints and not affirmative defenses[,] . . . the same basic standard applies" to determine if proposed amendments to affirmative defenses are futile. *Equal Emp. Opportunity Comm'n v. Whiting-Turner Contracting Co.*, No. 3:21-CV-00753, 2023 WL 2534744, at *2 (M.D. Tenn. Mar. 15, 2023) (quoting *Gore v. El Paso Energy Corp. Long Term Disability Plan*, No. 02-1008, 2008 WL 361258, at *6 (M.D. Tenn. Feb. 8, 2008)). "The court must determine whether the defendants' allegations raise the merits of the defense above a speculative level or, put differently, whether, assuming the truth of the defendants' allegations regarding the defense, it nevertheless would fail." *Gore*, 2008 WL 361258, at *6; *see also HLFIP Holding, Inc. v. Rutherford Cnty., Tennessee*, No. 3:19-CV-00714, 2021 WL 6498858, at *18 n.18 (M.D. Tenn. Nov. 15, 2021).

In Count IV of the second amended complaint, Custard Hut pleads a claim under section 3 of the MCPA, which makes it unlawful for a person to engage in unfair, unconscionable, or deceptive trade practices, including "[c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," Mich. Comp. Laws § 445.903(1)(a), and "[r]epresenting that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have," *id.* § 445.903(1)(c). Custard Hut alleges that the defendants employed branding that is confusingly similar to its own. Second Am. Compl., ECF No. 57, ¶ 128, PageID.834.

However, section 4 of the MCPA exempts from liability "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). The defendants contend that MDARD is the "regulatory board" that furnishes the "statutory authority" that triggers the exemption.

When determining when this exemption applies, the Michigan Supreme Court has explained that "the relevant inquiry 'is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210, 732 N.W.2d 514, 518 (2007) (citing *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28 (1999)). The general transaction must have been "explicitly sanctioned" by law. *Id.* at 213, 732 N.W.2d at 520. Defendants bear the burden of proving that they qualify for the defense. *Id.* at 208, 732 N.W.2d at 517.

The first task, then, is to identify the "transaction or conduct" at issue. Here, the defendants contend that the relevant conduct is the sale of their frozen confectionary products. However, the plaintiff's substantive allegations relate to the defendants' branding and marketing activities — not the sale of food. Many of the cases do not engage this question deeply and define the "transaction or conduct" as the sale of the underlying product or the defendant's general line of business. *See, e.g.*, *Duronio v. Merck & Co., Inc.*, No. 267003, 2006 WL 1628516, at *6-7 (Mich. Ct. App. June 13, 2006) (defining the transaction as the sale of pharmaceuticals). This is true even

where the alleged misconduct involves marketing activity creating a probability of brand confusion. *See, e.g.*, *FOMCO, LLC v. Hearthside Grove Ass'n*, No. 20-1069, 2021 WL 2659632, at *2-3 (W.D. Mich. June 29, 2021) (applying the exemption to a licensed real estate broker that allegedly improperly used a competitor's name in its developments); *Breeze Smoke LLC v. Yatin Enters. Inc.*, 2023 WL 3070893, at *13 (W.D. Mich. Apr. 25, 2023) (applying the exemption to an MCPA claim about cigarette packing that allegedly was confusingly similar to a competitor's because cigarette marketing is regulated by the FDA).

The better approach is found in the cases that attempt to distinguish the alleged misconduct from the defendant's general line of business. *See American Auto. Ass'n, Inc. v. Advance Am. Auto Warranty Servs., Inc.*, No. 09-12351, 2009 WL 3837234, at *6 (E.D. Mich. Nov. 16, 2009) (noting that the relevant conduct was the defendant's allegedly improper registration of business and domain names, not its sales of automobile insurance); *see also Deavon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1177 (N.D. Cal. 2012) (applying Michigan law and defining the relevant conduct as the defendant's unauthorized release of protected information rather than its line of business). Such distinctions are necessary, since the point of the exemption appears to be to allow the "regulatory board or officer acting under statutory authority" of state law to determine the propriety of the challenged conduct. *Att'y Gen. v. Diamond Mortg. Co.*, 414 Mich. 603, 617, 327 N.W.2d 805, 811 (1982). Failing to determine whether alleged misconduct relates to a defendant's line of business broadens the scope of the exemption, effectively denying plaintiffs a remedy when businesses engage in misconduct that their regulatory body does not govern. *Cf.* Victor E. Schwartz, et. al., *"That's Unfair!" Says Who—the Government or the Litigant?: Consumer Protection Claims Involving Regulated Conduct*, 47 Washburn L.J. 93, 105, 124 (2007)

(explaining that consumer protection act exemptions are the legislature's determination that certain matters are appropriate for resolution by administrative agencies, rather than by a trial court.).

Despite other broad language in the Michigan Supreme Court's opinion, an analysis that distinguishes the alleged misconduct from the defendants' line of business also tracks with *Liss* itself. In a footnote, the *Liss* majority explained that the outcome in two previous cases turned on the nexus between the claim and the regulatory regime. *Liss*, 478 Mich. at 210 n.23, 732 N.W.2d at 518 n.23. Where the claim in one case involved mortgage writing, which the defendant's real estate license did not authorize, the exemption did not apply. *Ibid.* (citing *Diamond Mortgage*, 414 Mich. at 617, 327 N.W.2d at 811). But when the claim involved insurance, which the defendant was licensed to sell, the exemption applied. *Ibid.* (citing *Smith*, 460 Mich. at 465, 597 N.W.2d at 38).

Applying this approach here demonstrates that the exemption plainly is inapplicable. After all, the subject of the case — the defendants' branding — is likely beyond MDARD's regulatory reach. It is true that MDARD possesses some authority to regulate a food establishment's advertising, *see, e.g.*, Mich. Comp. Laws § 289.5101(1)(e) (making it illegal to "[d]isseminate a false advertisement concerning food or a food establishment"), but those directives focus on food products, not general business principles. Nearly all acts prohibited by the Food Law center on the food itself. *See, e.g., id.* at §§ 289.5101(1)(a), (b). And the statute refers to "misbranded food," not "misbranded establishments." *Ibid.* Stealing a trademark would not be a "general transaction" over which MRARD would have any regulatory authority. A food establishment's generalized branding and marketing activities are not within MDARD's purview. Therefore, the exemption provided by section 4 of the MCPA is not applicable.

- 12 -

To illustrate the point, consider that under MDARD, "a person shall not operate a food establishment unless licensed by the department as a food establishment." Mich. Comp. Laws § 289.4101. To obtain a food establishment license, an applicant, among other things, must submit an application, pay a fee, and comply with the requirements of the Food Law. § 289.4107. Tracking that reasoning, the court in *Shaker v. Champion Petfoods USA, Inc.*, 625 F. Supp. 3d 621 (E.D. Mich. 2022), addressed an MCPA claim brought against a company that allegedly sold mislabeled dog food. Because the defendant was licensed to distribute dog food in the state, its conduct was "specifically authorized" and subject to MDARD's oversight. *Id.* at 628. Therefore, its conduct "related to the distribution" of dog food, including the mislabeling, was exempt from the MCPA. *Ibid.*; *cf. Alexander v. Del Monte Corp.*, No. 2011 WL 87286, at *2-3 (E.D. Mich. Jan. 11, 2011) (holding that a grocery store regulated by MDARD was exempt from an MPCA breach of implied warranty claim concerning a jar of fruit).

But the defendants' argument goes further than *Shaker* and *Alexander*, which both involved claims related to the products themselves. Again, Custard Hut's complaint challenges the defendants' alleged unfair trade dress, which does not necessarily relate to the product itself. *Shaker*, 625 F. Supp. 3d at 628. And the defendants do not argue that MDARD can regulate this form of misconduct. The defendants, therefore, have not demonstrated that the MCPA's exemption applies. *See Am. Auto. Ass'n*, 2009 WL 3837234, at *6; *Deavon*, 901 F. Supp. 2d at 1177-78. Because the exemption would not apply to the challenged conduct in this case, the proposed amendment to the affirmative defenses would be futile.

III.

The defendants have not demonstrated good cause to amend the scheduling order to allow a late amendment to their pleadings. The proposed amendment is untimely and unduly prejudicial to the plaintiff. And the amendment would be futile in any event.

Accordingly, it is **ORDERED** that the defendants' motion to amend its affirmative defenses (ECF No. 76) is **DENIED**.

                                                                                  s/David M. Lawson
                                                                                   DAVID M. LAWSON
                                                                                    United States District Judge

Dated:   October 11, 2023